S. P. ELLIS v. E. B. NELSON, and E. B. Nelson doing Business as Nelson's Independent Elevator.

(162 N. W. 554.)

Landlord — tenant — lease of farm — term of years — shares of grain — sale by tenant of his share — each year — purchaser of the grain — in due course — without notice — agency — question of — tenant was — for purpose of selling the grain — knowledge of landlord.

1. Where one, the landlord, had leased his farm to another, the tenant, for

Note.—On right of a landlord to a lien on the property of his tenant, see note in 119 Am. St. Rep. 122.

a term of five years, wherein the landlord was to furnish all the seed and each to have half of the grain raised upon such premises, and the landlord had a lien on the tenant's share of such grain by reason of a provision in the lease, and the landlord permits the tenant during each of said years to haul off and sell all of the tenant's share of such grain and a part of the landlord's share also, and the landlord during all of such time, until after the expiration of the lease, gives no notice to the person purchasing such grain from such tenant that the landlord claims a lien thereon, initiates no judicial proceedings of any kind or character to indicate his dissatisfaction with the action of the tenant, serves no notice on the purchaser, the elevator company, or person who in good faith and in the ordinary course of business purchases such grain and parts with value, that he is in any manner dissatisfied, and in no manner makes any complaint concerning the action of his tenant in the selling of such grain, but during all of such time remains silent, manifesting no dissatisfaction, and apparently acquiescing in the acts of his tenant, and the testimony concerning all such transactions and acts of the tenant is submitted to the jury,—*held*, that there was sufficient evidence of agency to submit the question of agency to the jury, and the jury having found that the tenant was the agent of the landlord for the purpose of selling and disposing of the grain, which he did sell and dispose of, it is conclusive, and will not be disturbed on appeal.

**Lease for term of years — landlord retaining title to crops — security for covenants — advances and indebtedness — mere lien — chattel mortgage — nature of.**

2. Where a lease for a term of years contains a provision that the title and possession of all grains raised upon such premises during the term of such lease shall remain in the landlord until a division thereof, *held* that such a provision in the lease creates a lien in the nature of a chattel mortgage in favor of the landlord on the tenant's share of the crop for the protection and security of advances and indebtedness, as provided by the laws under consideration.

Opinion filed April 16, 1917.

Appeal from the District Court of Barnes County, *J. A. Coffey,* J. Affirmed.

*Lee Combs* and *L. S. B. Ritchie,* for appellant.

The mere fact that appellant, during some of the years covered by the lease, permitted his tenant to haul and deliver what might have been the tenant's share of said grain to defendant, furnishes no proof that he had permission to receive pay therefor, nor does it protect defendant in making payment to the tenant. Endreson v. Larson, 101 Minn. 417, 118 Am. St. Rep. 631, 112 N. W. 628.

It is well settled that under a farm contract embodying a share and share alike crop between landlord and tenant, which contract contains a provision retaining title to the entire crop until all advances and debts due from tenant to landlord are paid, and until an actual division of the crop is had, as obtains in this case, the tenant acquires no right or title or interest in the crop unless these conditions are actually performed. Angell v. Egger, 6 N. D. 391, 71 N. W. 547; Hawk v. Konouzki, 10 N. D. 37, 84 N. W. 563; Bidgood v. Monarch Elevator Co. 9 N. D. 627, 81 Am. St. Rep. 604, 84 N. W. 561; McFadden v. Thorpe Elevator Co. 18 N. D. 93, 118 N. W. 242.

One who takes or buys property from a person who has no right to part with or sell it and exercises dominion over it, whether with or without knowledge of the owner's rights, and even without any notice of such rights, is guilty of conversion. 38 Cyc. 224, note 2, and cases cited.

*Winterer & Ritchie,* for respondent.

The plaintiff's tenant was the agent of plaintiff in selling and delivering the grain in question, and so acted with full knowledge of plaintiff, and without objection.

The course of dealings by an agent, sanctioned by the principal, is one of the recognized modes of proving the existence of an agency. Kent v. Addicks, 60 C. C. A. 660, 126 Fed. 112; Lytle v. Bank of Dothan, 121 Ala. 215, 26 So. 6; Union Gold Min. Co. v. Rocky Mountain Nat. Bank, 2 Colo. 565; Sun Mut. Ins. Co. v. Saginaw Barrel Co. 114 Ill. 99, 29 N. E. 477; Barnett v. Gluting, 3 Ind. App. 415, 29 N. E. 154, 927; Continental Tobacco Co. v. Campbell, 25 Ky. L. Rep. 569, 76 S. W. 125; Trull v. True, 33 Me. 367; Hare v. Bailey, 73 Minn. 409, 76 N. W. 213; Standley v. Clay, 68 Neb. 332, 94 N. W. 140; Norden v. Duke, 113 App. Div. 99, 99 N. Y. Supp. 30.

Evidence of similar transactions, acted upon by the principal, is admissible as tending to show the extent of authority. White v. German Alliance Ins. Co. 43 C. C. A. 216, 103 Fed. 260; Thurber v. Anderson, 88 Ill. 167; McCormick Harvesting Mach. Co. v. Lambert, 120 Iowa, 181, 94 N. W. 497; Forsyth v. Day, 46 Me. 176; Thompson v. Clay, 60 Mich. 627, 27 N. W. 699; Beattie v. Delaware, L. & W. R. Co. 90 N. Y. 643; Stevenson v. Hoy, 43 Pa. 191; Gallinger v. Lake Shore Traffic Co. 67 Wis. 529, 30 N. W. 790; Keegan v. Rock,

128 Iowa, 39, 102 N. W. 805; Ruthven v. Clarke, 109 Iowa, 25, 79 N. W. 454; 31 Cyc. 1650.

Circumstances tending to show the exercise of authority on the part of the agent, and recognition by the principal, are admissible, although they may have no direct connection with the issue tried. 31 Cyc. 1663, and cases cited under foot note 67.

Evidence of what plaintiff told his tenant to do, the acts of the tenant, the acquiescence of plaintiff with full knowledge, and the conduct of the parties generally, all go to the question of agency, and are proper in such cases. Bank of Ukiah v. Mohr, 130 Cal. 268, 62 Pac. 511; Union Paving & Contract Co. v. Mowry, 7 Cal. Unrep. 6, 70 Pac. 81; Witcher v. Gibson, 15 Colo. App. 163, 61 Pac. 192; McCormick Harvesting Mach. Co. v. Lambert, 120 Iowa, 181, 94 N. W. 497; Allen v. Fuller, 182 Mass. 202, 65 N. E. 31; Ryerson v. Tourcotte, 121 Mich. 78, 79 N. W. 933; Winter & A. Co. v. Atlantic Elevator Co. 88 Minn. 196, 92 N. W. 955; Starr v. Gregory Consol. Min. Co. 6 Mont. 485, 13 Pac. 195; Creighton v. Finlayson, 46 Neb. 457, 64 N. W. 1103; Day & F. Lumber Co. v. Bixby, 4 Neb. (Unof.) 154, 93 N. W. 688; Grannis v. Hobby, 137 N. Y. 559, 33 N. E. 486; Lough v. Davis, 35 Wash. 449, 77 Pac. 732; Roche v. Pennington, 90 Wis. 107, 62 N. W. 946; Cameron v. White, 74 Wis. 425, 5 L.R.A. 493, 43 N. W. 155; Sariol v. James P. McDonald Co. 127 App. Div. 648, 111 N. Y. Supp. 796.

Where one acts as agent for another for a considerable time it is sufficient to show his authority. Neibles v. Minneapolis & St. L. R. Co. 37 Minn. 151, 33 N. W. 332.

GRACE, J. This is an appeal from the judgment of the district court of Barnes county in favor of the defendant and respondent and against the plaintiff.

The complaint in the case is one in conversion. The plaintiff in the case is the owner of a large tract of land which he had leased for a term of years to one Henry Swartz as tenant, who during the year 1914 raised upon such land a large quantity of wheat, which was delivered and hauled by said Swartz to E. B. Nelson, doing business at Oriska, North Dakota, as Nelson's Independent Elevator. The amount

of wheat so delivered to such elevator was 3,315 bushels, according to the complaint of the plaintiff, title to which is claimed by the plaintiff.

The complaint sets forth a demand of the plaintiff of the defendant for the value of such grain, which is alleged to be $4,640.50. The answer of the defendant, after denying certain paragraphs of the complaint, alleges the facts to be that for a period of five years prior to the 13th day of November, 1915, commencing on the 13th day of November, 1910, and continually during said period of five years, the said plaintiff herein, together with one Henry Swartz, were associated together in the operation, conduct, and farming of a certain farm situated in Weimer township, Barnes county, North Dakota; said Henry Swartz had the sole and exclusive charge and conduct of the farming operations conducted upon said farm by the said plaintiff and the said Henry Swartz, and did have sole and exclusive charge of the hauling and selling of all grains and produce sown; grown, harvested, raised, and produced upon said farm during the said period; that during each of the several farming years included in the said period, to wit, farming years 1911, 1912, 1913, 1914, and 1915, the said plaintiff herein did instruct the public warehousemen doing business in the village of Oriska, county of Barnes, and state of North Dakota, that the said Henry Swartz had sole and exclusive charge of the marketing and selling of all grains raised and produced on said farm during said several years, and that during said several years and each of them, and with the full knowledge and consent and concurrence of the plaintiff herein, the said Henry Swartz did market the grains sown, grown, and produced upon said farm, other than such as was necessary to be retained for seed, and did sell the same to the various warehousemen doing business at Oriska, Barnes county, North Dakota; and during the year 1914 the said Henry Swartz did market the grains produced upon said premises in the year 1914, and did haul and sell the same to the above-named defendant in part, and the remainder of that part marketed was hauled and sold to the Acme Elevator Company, at Oriska, Barnes county, North Dakota; and further alleging that there were unsold and retained upon the farm about 1,200 bushels of wheat. That that part of the grain so delivered to the defendant was sold by Swartz with the knowledge and consent of the plaintiff, and that the remainder of said grain so hauled was sold by the plaintiff. Defendant further

alleges that he had no knowledge of the proportionate parts of said grains belonging to either the plaintiff or Swartz, and alleges that he had received notice from the plaintiff that the matter of marketing and selling of said grain was one in which he, the plaintiff, would not interfere, but was in the sole and exclusive charge of said Henry Swartz.

The complaint then sets forth the number of gross and net bushels delivered to the defendant elevator, and the defendant further alleges that it was the custom and practice adopted by the said plaintiff and the said Henry Swartz in the matter of the conduct of the farming operations upon said farm during the farming years mentioned that said Henry Swartz was, upon the hauling of the grain, to sell a portion of said grain, and alleged that it was agreed between Swartz and the plaintiff that upon the sale of such grain the said Swartz was to account to the plaintiff for the proceeds.

The defendant further alleges that he at no time received the said grain and converted the same to his own use, but on the contrary disposed of the same in the manner by custom established and both acts and words of the plaintiff herein consented to, and not otherwise.

Defendant further alleges that prior to the time of the selling of said grain and the hauling thereof, a division of the grain had been had between Swartz and the plaintiff, each receiving his portion, and Swartz did not sell or receive payment for more than his share of said grain.

The defendant, further answering, alleges that the plaintiff herein had constituted the said Henry Swartz his agent during the period of five years immediately preceding this action; to wit, "Commencing on the 13th of November, 1910, for the purpose of marketing and selling said grain and receiving the purchase price therefor; and that in pursuance of said agency, and not otherwise, the said Henry Swartz marketed and sold the grain, or a large portion thereof, and did receive payment therefor, under full authority conferred upon him by the plaintiff herein, for the purpose of accounting to the plaintiff for such proceeds; and that during all the time said Henry Swartz marketed the said grain, sold the same, and received payment therefor, the said plaintiff herein was fully aware of his action and acts, and had full and complete knowledge thereof, and did consent thereto, and concur therein, and did permit the said Henry Swartz to make division of

36 N. D.—20.

said grain and sell the same and receive payment therefor; and that during the year 1914 the said plaintiff at various times was present in the village of Oriska, county of Barnes, and state of North Dakota, at the time when the said grain was hauled and delivered to the defendant herein, and at the time the same was sold by said Swartz."

The defendant further alleges that the grain was hauled to his elevator in the due course of business, was purchased by him without notice of any claim on the part of the plaintiff, other than that the said plaintiff had an interest therein, but that the said Henry Swartz had full power and authority to deliver the same to this defendant, to sell the same, and to receive payment therefor; that if the said plaintiff had rescinded the authority of the said Swartz to sell said grain, he never at any time notified the defendant thereof, although he at all times had knowledge of the fact that the said Swartz was hauling the said grain to the defendant herein, and was selling the same to the defendant, and that the defendant was purchasing the same from the said Henry Swartz; that at the time the plaintiff last sold grain to the defendant, on the 2d day of February, 1915, the plaintiff well knew that all the grain that had been hauled into the said elevator from the said farm had been sold, and that he, the said plaintiff, had received payment for a portion thereof, and that the said plaintiff did not then, nor had he at any time prior thereto notified the defendant that the said Henry Swartz had no authority to sell grain, or that the authority which had been prior thereto conferred upon the said Henry Swartz had been rescinded, or that the defendant had improperly purchased any of the said grain from the said Henry Swartz, and that the said defendant had no knowledge that the transaction was not regular and in conformity to the practice, custom, and agreement established and entered into prior thereto, and had no knowledge that the said plaintiff contended the situation to be otherwise or that the plaintiff claimed to be the sole owner of the said grain until on the 3d day of April, 1915.

The facts in the case appear to be as follows: The plaintiff and appellant is the owner of a large farm consisting of eight quarter sections of land in sections 21 and 22, Township 141, Range 56, Barnes county, North Dakota, which land lies about 6 miles north of Oriska, Barnes county, North Dakota. The land in question was leased by the

plaintiff to one Henry Swartz for five years, commencing in the latter part of November, 1910, under a written lease, being "exhibit A" of this case, by the terms of which said Swartz was to farm said lands upon shares; that is, for one half of all crops raised on said premises; the plaintiff to furnish the seed and pay half the thresh bill. The contract contained the provision retaining the title of all said grain raised upon said lands during each year of the life of the contract in the plaintiff until all the indebtedness due from said Swartz to said plaintiff, including advances and other debts, was fully paid, and until an actual division of the grain was made. That in the year 1914, under the terms of said written lease, Swartz operated such farm and raised thereon, among other grains, 3,315 bushels of wheat of the value of $1.40 per bushel, or $4,640.50. The defendant, under the name of Nelson's Independent Elevator, operated a public elevator at Oriska, North Dakota, between the time of the threshing of said grain in the fall of 1913 to the 3d day of April, 1915, to which said Swartz hauled and delivered said wheat to said defendant, who received it in his elevator at Oriska, and paid said Swartz in full for the same.

Whether the marketing of the grain in the year 1914 was with the consent, permission, and authority of plaintiff depends upon the disputed question of fact whether or not Swartz was the agent of Ellis.

On the 3d day of April, 1915, plaintiff demanded from the said defendant, at his place of business in Oriska, the grain in question or its equivalent in money, but the defendant refused to turn over the grain or any part thereof, or the value thereof.

Disposing of the clause in the contract where the title and possession to all grains raised upon said land are by the terms of said lease reserved to the landlord Ellis until a division thereof, and all advances of the landlord to the tenant paid, it is held that such a clause in the lease means that the landlord has a lien on the tenant's share of said grain in the nature of a chattel mortgage lien until such advances are paid, unless Ellis, by his conduct, has waived such provision; that is, unless by his acts, language, and conduct prior to the time of the marketing of the wheat in question he has constituted Swartz his agent for the purpose of marketing the grains which were raised upon such farm during the lease, then Ellis would have a special ownership in Swartz's half of said grain also. Following the decision in the Min-

neapolis Iron Store Company v. William Branum, this entire case turns upon the question of agency, and whether there was sufficient evidence of agency to submit to the jury. If there was such evidence concerning agency given at the trial of this case so that the minds of reasonable men considering such evidence might and could draw different conclusions therefrom, then there was sufficient evidence of agency to constitute a question of fact which should be submitted to the jury. It will be necessary to an intelligent comprehension of this question to set forth some of the evidence concerning the question of agency.

Mr. Ellis, having been sworn as a witness in his own behalf, testified as follows concerning the 1914 crop in question:

Q. Had you at that time—did you at that time, at any time heretofore, authorize Mr. Swartz to haul that grain out as your agent, or upon your behalf, or to sell any of it?

A. No, sir.

Q. Who hauled the wheat raised on these premises in 1911?

A. Mr. Swartz and his hired man, I guess.

Q. So the grain was hauled that year by Mr. Swartz?

A. Yes, sir.

Q. By whom was it sold?

A. A part of it was sold by him and part of it was sold by me.

Q. Who hauled the grain raised on these premises in 1912?

A. Mr. Swartz.

Q. By whom was it sold?

A. Well, some of it was sold by Mr. Swartz.

Q. Some by you?

A. Most of it was sold by myself.

Q. Is it not a fact, in the year 1912, you told the elevator man at Oriska, the matter of hauling and marketing that grain was a matter you left entirely to Mr. Swartz?

A. I think Mr. Nelson asked where we were going to haul our wheat when we sold out at the farm. I told him I did not know, we were talking of shipping it. Did not make any difference to me which elevator I sold it to.

Q. Did you say at that time that was a matter of decision of Mr. Swartz?

A. I don't know, but I told him it did not make any difference to me which elevator Mr. Swartz hauled my grain to me.

Q. Did you have any talk with Mr. Nelson regarding the hauling and marketing of any grain during the fall of 1913?

A. I remember I had some talk. Mr. Nelson asked me, as I said before, he asked me where I was going to haul my grain. I told him Mr. Swartz was hauling that grain and I left it to him as to where he hauled the grain to. Had nothing to say in 1913 or 1912, did not say either way I had conversation about it.

Q. Who sold the grain hauled to Mr. Nelson's elevator in the fall of the year 1913, that is the grain hauled to the elevator from these premises?

A. I made the settlement. I was told Swartz sold some of the wheat. I went down there and Nelson paid me for what was in the elevator.

Q. Gave you a statement?

A. Gave me a statement just as he did this other time. Gave me a statement of what was in the elevator.

Q. Swartz sold some prior to that time?

A. Yes, sir.

Q. When did you and Mr. Nelson first talk with regard to the crop grown on the premises in 1914?

A. About December 10th, 1914.

Q. Is it not a fact, Mr. Ellis, it was agreed that he was to deliver this wheat and sell it and pay the thresh bill?

A. No, sir.

Q. The matter of handling of that grain was done this year just the same as it had been done in previous years, was it not?

A. Yes, sir, just about. Hired men every year to haul my grain.

Q. And how about his grain?

A. I did not hire men to haul his.

Q. Was there anything said in 1914 to that effect?

A. No, sir, this was understood every year. I was to sell this grain, his share to pay my indebtedness, always had done so before.

Q. As a matter of fact, the difference between you and Mr. Swartz had always been the matter of his half of the grain had been hauled and sold?

A. Yes, sir, after the grain was hauled we made settlement.

Q. And sold it?

A. Yes, sir, sold it; and he was given credit. Had a book account and would go up and sell it and make settlement.

Q. You selling the grain each fall?

A. Not all of it, I did not.

Q. He would sell part of it?

A. He would sell some, yes.

Q. That was agreeable to you both, was it?

A. I do not know as it was agreeable.

Q. You did not instruct him not to?

A. I did not want to go to law about it. He paid me what he owed me; gave him no right to sell it.

Q. You did not object to him selling it?

A. Oh, probably not, if he did not sell too much.

Nelson, being called as a witness in his own behalf, testified as follows:

Q. Did you have occasion to solicit the purchase, or buy any grain from that farm during the several years of Mr. Swartz's occupation?

A. Yes, sir.

Q. From whom did you solicit that?

A. From Mr. Ellis.

Q. The plaintiff in this action?

A. Yes, sir.

Q. You may state to the court and jury what Mr. Ellis informed you at the time of that solicitation. Where and when was this solicitation had?

A. I do not recall the dates I have solicited from Mr. Ellis. He told me he left that entirely with Mr. Swartz. Wherever he wanted to haul the grain he could do so.

Q. You solicited the hauling or the buying?

A. The buying.

Q. He said he left that entirely with Mr. Swartz?

A. Yes, sir.

Q. Did you during the year of 1911, the first year of this farm contract, purchase the crops raised, buy the crops raised, on these premises from either Mr. Swartz or Mr. Ellis?

A. Yes, sir.

Q. Of whom did you buy it?

A. Mr. Swartz.

Q. From whom did you buy the grain, if any?

A. From Mr. Swartz.

Q. Did you pay Mr. Ellis for any of the grain?

A. No, sir.

Q. Did you have any conversation the next year with these parties or with Mr. Ellis in regard to the purchase of the grain there the year 1912?

A. I don't remember. I have solicited several times. You mean—I don't remember that year.

Q. You solicited grain several times?

A. Yes, sir. Every time I solicited the same answer would come forth. He left that entirely with Mr. Swartz.

Q. So, you then solicited from Mr. Swartz?

A. Yes, sir.

The witness Joseph Josski testified that he had a conversation with Mr. Ellis at Valley City, in Ellis's office about the 4th day of March, 1915. The witness Josski was asked the following questions, and gave the following answers:

Q. Was anything said about who would have the right to haul and sell the wheat grown there that year? Well, did Mr. Ellis tell you at the time you talked to him in his office at Valley City, March 4th, 1915?

A. Yes.

Q. As to whether or not he said anything to Swartz as to whether he should sell the grain on the farm that year?

A. Was here, Mr. Ellis told me like that. Let him do what he wants, like that. Sold the wheat and took the money. Let him, and he do dirty work like that.

The testimony of this witness is denied by Mr. Ellis on rebuttal.

This is about all of the testimony that goes to the question of agency.

From the testimony of Nelson it appears that he bought all of the 1911 crop and paid Swartz for it, and that he bought some of both the 1912 and 1913 crops and paid Swartz for it.

Ellis also testifies in answer to the following questions:

Q. You did not object to him selling it?

A. Oh, probably not, if he did not sell too much.

He testifies also that he, Ellis, did not sell all the grain, and that Swartz would sell some. It seems from the testimony that Ellis never made any dissent from what Swartz had done in regard to selling some of the grain during 1911, 1912, and 1913. He had made no demand for any of the grain sold during these years by Swartz, and had brought no action to recover it, had served no notice upon any of the elevators to which it was sold for them not to pay Swartz, and in fact had taken no steps to show that the action of Swartz was not perfectly agreeable to him. He did not tell Nelson or any other elevator man not to buy such grain. On November 25th it appears from the testimony of Nelson that Ellis was down to Nelson's elevator, and that at that time he asked Nelson if Swartz was hauling grain to the elevator, and Nelson told him that he was; and that at such time Ellis did not say anything concerning whether Nelson should pay for it. That nothing was said at such time about Swartz selling the grain, although Ellis had asked at such time if Swartz was hauling the grain. It appears that another conversation was had along the same line on the 29th of September; and, according to the testimony of Nelson, Ellis was at the elevator on the 4th and 5th of November, when talks were had about the hauling of the grain. And also that Ellis came down on the 20th of December and sold some of the grain, and Nelson testifies that Ellis had never before that sold any of the grain himself.

Q. Had he ever sold any of the grain to you before that, himself?
A. Not during the term of this lease.
Q. That is during 1912, 1911, 1913, and 1914?
A. No, sir.
Q. This was the first grain Mr. Ellis has sold to you?
A. Yes, sir.

It would appear that during all of these different years Ellis had knowledge that Swartz was selling the grain upon which he had a lien under the clause of his contract. One of the rules laid down in Mechem on Agency, vol. 1, § 457, is as follows: "The rule as to what amounts to ratification of an unauthorized act is elementary and may be sufficiently stated thus: Where a person assumes in good faith to act as agent for another in any given transaction, but acts without authority, whether the relation of principal and agent does or does not exist between them, the

person in whose behalf the act was done upon being fully informed thereof *must within a reasonable time disaffirm such act,* at least in cases where his silence might operate to the prejudice of innocent parties, or he will be held to have ratified such unauthorized act." Mobile & M. R. Co. v. Jay, 65 Ala. 113.

Again, it was said: "We suppose acquiescence or tacit assent to mean the neglect to promptly and actively condemn the unauthorized act and to seek judicial redress after the knowledge of the committal of it, whereby innocent third parties may have been led to put themselves in a position from which they cannot be taken without loss. It is the doctrine of equitable estoppel." Kent v. Quicksilver Min. Co. 78 N. Y. 187, 4 Mor. Min. Rep. 47.

It would seem in this case that the plaintiff has tacitly acquiesced in the acts and conduct of his tenant Swartz; that he has kept silent when he should have spoken; that by his silence he tacitly approved the conduct of Swartz when he should have openly disaffirmed it; that his conduct has been inconsistent with disapproval.

We realize that there are two sides to this question, and if we were to consider that at the time the act was done the third party knew he was dealing with a special agent and took no steps to ascertain whether or not the proposed act was within the authority of the special agent, does the principal owe such third party who parted with the value a greater protection than the third party owes to himself? He states that at the time the act was done the third party knew that it was at least doubtful whether the act was within the authority. Does that fact impose any duty upon him to ascertain the extent of the authority? Can he assume that in all probability the principal would ratify the act? But in the case under consideration all the evidence of agency was submitted to the jury, and there was some evidence tending to establish the agency. The testimony is conflicting, and is such that men of reasonable minds could draw different conclusions therefrom, and hence would seem to be a proper question for the jury. The jury having passed upon all these questions of fact concerning agency, and all questions of fact in this case, their conclusion is binding and conclusive upon this court.

The assignments of error Nos. 1, 2, 3, 4, 5, and 6 relate to the admission or exclusion of evidence concerning agency, and there was no error in the court's ruling therein.

Errors Nos. 7, 8, and 9 relate to the court's instructions, and we find no error therein.

As to assignment of error No. 10, the evidence is sufficient to sustain the verdict.

As to error No. 11, the verdict is not against the law in the case.

It is further held that if defendant herein had authority to buy any wheat from Swartz, he was authorized under the circumstances to buy all that he did buy. If Ellis, by his silence, tacitly ratified the acts of Swartz in selling such grain, such ratification extended to all the grain which Swartz sold the defendant, which would include the 300 bushels of wheat which the plaintiff claims Swartz sold over and above his half of the grain. If, as the jury have found, Swartz was the agent of Ellis for the purpose of selling this grain, then the selling of such grain by Swartz, the agent, would operate as a waiver of any lien which Ellis had upon Swartz's share of such grain, Ellis having knowledge of the sale of such grain during each of the years of such lease, and having remained silent as to the sale of such grain by Swartz, and having made no demand except the one made prior to the bringing of this action, nor taken any judicial proceedings, nor made any disaffirmance of Swartz's authority, nor manifestations of dissent therefrom.

There too was evidence from which the jury might find an ostensible agency. Swartz had sold the grain from the farm in the past and with the consent and acquiescence of the owner of the land,—at least there was evidence to this effect. The practice had gone on from year to year. No notice of any change in the relationship of the parties or in the authority of Swartz was given to the elevator company. The elevator company had the right to infer that the same authority existed in Swartz as had existed in the past. This, of course, was a matter for the jury to pass upon, but there was evidence from which they could make these findings.

The judgment appealed from is in all things affirmed with costs.