ANDREW ODEGARD, Respondent, v. I. C. HAUGLAND, Appellant.

(169 N. W. 170.)

**Personal property — chattel mortgage — subject to lien of — foreclosure and sale — agreement between purchaser and owner — privilege to owner to repay purchase price with stated price within stated time — purchaser becomes agent of owner — must deliver property to owner — on tender of amount within stated time — his failure and refusal constitute conversion.**

1. Where personal property is subject to the lien of a chattel mortgage and such chattel mortgage is foreclosed and the personal property covered by such chattel mortgage is sold upon such foreclosure sale, and a purchaser at such sale agrees with the owner of the personal property sold at the chattel mortgage sale that the purchaser would purchase the personal property at such sale and pay for the same and that the owner might, within five days, repay the purchaser the amount paid out by him at such sale, such purchaser, under such an agreement, is the agent of the owner of the property and upon the payment or tender to the purchaser by the owner of the purchase price of said property for which the property was sold at said foreclosure sale within the time stipulated the purchaser must deliver such property to the owner, and failing and refusing to do so in accordance with the terms of the agreement he is liable for conversion for the value of the property purchased at such sale and converted.

**Agent for another — executory agreement to act as — consideration — not needed where act is gratuitous — promise must be kept.**

2. An executory agreement to act as agent for another is ordinarily not binding on either party unless based on sufficient consideration, but where one gratuitously agrees to act for another and enters upon the performance of the undertaking, he must complete performance according to his promise even though there is a lack of consideration.

**Agency in such cases — question for jury — under appropriate instructions — verdict conclusive.**

3. The question of agency was submitted to the jury under proper instructions and it found the agency existed and its verdict is conclusive in this regard.

Opinion filed July 16, 1918.  Rehearing denied September 25, 1918.

Appeal from the District Court of Benson County, North Dakota, Honorable *C. W. Buttz,* Judge.

Affirmed.

*Cowan & Adamson* and *H. S. Blood,* for appellant.

Where the mortgagor gives a subsequent mortgage upon the same property, his purchase at sale under first mortgage will operate for the benefit of it in the same way as a discharge or a transfer to himself. 3 Jones, Mortg. § 1887 and cases cited; Ayer v. Phila. & B. Brick Co. 157 Mass. 57, 31 N. E. 717.

He cannot set up against his own encumbrance another one that he himself has given.  In like manner the purchaser of an equity of redemption subject to two mortgages, purchasing at foreclosure of senior mortgage, cannot set up his title acquired at the sale, as against junior mortgages.  Stiger v. Mahone, 24 N. J. Eq. 426; Hilton v. Bissell, 1 Sandf. Ch. 407; Thompson v. Halsted, 21 Wis. 118.

The right to redeem is given only to the mortgagee or his assigns. Comp. Laws 1913, § 8134.

There was no valid contract between appellant and respondent.  A proposition made by one, and not accepted by the other at the time, does not constitute a contract, nor was there the slightest consideration. Ayer v. Phila. & B. Face Brick Co. supra; Murphy v. Hanna (N. D.) 164 N. W. 32; Bailey v. Austrian, 19 Minn. 525; Tarbox v. Gotzian, 20 Minn. 139; Stensgard v. Smith (Minn.) 44 N. W. 669; Ellsworth v. Southern Minn. R. Co. 18 N. W. 822, 825; Tucker v. Wood, 12 Johns. 190; Keep & Hale v. Goodrich, 12 Johns. 396.

All that was said and done by the parties before the sale does not make a contract.  What passed between them after the sale is entirely immaterial and inadmissible.  Re Novak, 111 Fed. 161, Am. Bankr. Rep. 27; Re Roger, B. & Co. 196 Fed. 758, 28 Am. Bankr. Rep. 336.

*Flynn & Traynor,* for respondent.

A bankrupt has an interest in his bankruptcy estate even though the legal title has passed to the trustee upon his appointment and qualification. 7 C. J. 417.

The mortgagee, his assigns, or any other person may, in good faith, become a purchaser of property sold under mortgage. Comp. Laws 1913, § 8130.

The contract between the parties was one of agency, and the violation of such agency contract entitles the injured party to damages. Schmidt v. Beiseker, 14 N. D. 587.

Such a case as this, where one gratuitously offers to perform a service for another, and agrees that such other shall have the benefit thereof, does not require any consideration. Where a person enters upon and performs such act for another, it is his duty, and the law will require him, to keep his promise. 2 C. J. 433, 717.

It is an established rule of law that an oral agreement to extend the time of redemption, or to even give a right of redemption when no such right existed, is a valid agreement, and not within the Statute of Frauds, and for its support needs no consideration. Sleeten v. First Nat. Bank (N. D.) 163 N. W. 534; Wade v. Major (N. D.) 162 N. W. 399; Bristol v. Hershey (Cal.) 95 Pac. 1040; Ogden v. Stevens (Ill.) 89 N. E. 741; 27 Cyc. 1818; Kenmare Coal Co. v. Riley, 20 N. D. 182; Bickel v. Wessinger (Or.) 113 Pac. 34.

Defendant bought in the property at the foreclosure sale for plaintiff, and as plaintiff's agent, and agreed that plaintiff could repay him and have the property at any time within five days. Plaintiff offered the money to defendant within such time. Defendant wrongfully refused to accept same and deliver to plaintiff the property. Such acts on his part constitute a conversion for which he must answer in damages. Schmittdiel v. Moore (Mich.) 79 N. W. 195; Rice v. Kahn (Wis.) 35 N. W. 465.

GRACE, J. Appeal from the judgment of the District Court of Benson County, North Dakota, Honorable C. W. Buttz, Judge.

This appeal is one where the defendant appeals from the judgment of the district court of Benson county, and from an order denying a

motion for a judgment notwithstanding the verdict. The plaintiff, Odegard, also appeals from a portion of the judgment, being a portion thereof which denies the right of Odegard, the plaintiff, to recover approximately $700 in addition to the amount of the verdict rendered by the jury, basing his right to recover such additional amount on the alleged error of the court in instructing the jury to deduct from the value of the machinery involved in the action, the amount of the liens of the Avery Manufacturing Company and John W. Orchard. The action is one where the plaintiff seeks to recover from the defendant the value of a certain threshing machine and engine, the value of which is alleged to be $4,000, subject to a mortgage lien in favor of the Minneapolis Threshing Machine Company for $662, which was foreclosed and the property sold on the 1st day of August, 1913. The plaintiff pleads and relies upon the contract alleged to have been entered into between plaintiff and defendant just prior to the sale of such property at such foreclosure sale.

Plaintiff further alleges that the terms, in short, of such contract being that the defendant was to be at such sale and bid in and purchase the said threshing machine and engine and pay for the same, and that plaintiff was to repay the defendant within five days after the day of sale; that the defendant was to have the use of the threshing machine and engine for two days of the five days as compensation for his services in purchasing the threshing machine and engine on behalf of plaintiff. Plaintiff further alleges that the defendant appeared at the time of sale, bid and purchased the threshing machine and engine for $750; that within five days, plaintiff tendered the defendant the sum of $750 with interest which was refused by defendant, which amount plaintiff deposited in the Farmers and Merchants Bank at Warwick together with $2 interest, payable to the order of the defendant and served notice on defendant of such deposit. The answer of the defendant is a general denial, except that it admits the mortgage to the Minneapolis Threshing Machine Company and that the defendant bought the threshing machine and engine at the sale for $750.

Some considerable period of time prior to August 1, 1913, Odegard purchased a certain Minneapolis threshing machine and engine complete and had possession thereof until about August 1, 1913. In the spring of 1913, Odegard became bankrupt, filed his petition in bank-

ruptcy and trustee was appointed.   The Minneapolis Threshing Machine Company had a chattel mortgage lien on the machine.   Default having occurred in the mortgage, the same was foreclosed and the machinery covered by said mortgage was advertised for sale on August 1, 1913, at the village of Warwick.   The sale occurred at about two o'clock in the afternoon of that day.   Odegard attended the sale.   It is claimed by Odegard that a short time before the sale, and in the afternoon of the day of sale, Haugland came to Odegard who claimed to be then standing near the machinery on the street and asked Mr. Odegard if he intended to redeem the rig, and Mr. Odegard claims and testifies that Haugland said to Odegard: "I will bid it in for you and you can come in and settle afterwards."   Odegard testifies: "I thought that would be good enough but I don't know as I said anything."   This was just a few minutes before the sale.   Haugland, in his testimony, denies any such agreement.

There were two conversations which may be considered as throwing some light upon whether the contract, which if a contract at all, was one of agency.   Such conversations are testified to by the plaintiff and are as follows; the first conversation having taken place in the bank shortly after the sale:

Q. Was there some conversation between you and Mr. O'Hara and Mr. Haugland in the bank there at this time with reference to this sale?

A. Yes, sir.

Q. Just go ahead and state the conversation or the substance of it as near as you can.

A. With O'Hara?

Q. Tell it all.

A. Mr. O'Hara told me I had five days within which to redeem the rig if I wanted to.

Court. Was Mr. Haugland there when Mr. O'Hara was talking to you?

A. Yes, sir.

Court. Right close so that he could hear you?

A. Yes, sir, if he wanted to.

Mr. Cowan. I move to strike out the answer.

Court denied.

Witness. Mr. O'Hara told me I had five days within which to redeem if I wanted to. Twice he said that to him and Mr. Haugland stood right there and he says, "You can have five days, exclusive of to-day, in which to settle for the rig. All I want is a couple of days threshing."

The second conversation testified to was on the 6th day of August, 1913. The testimony is as follows:

Q. On the 6th day of August, 1913, did you have a conversation with Mr. Haugland about settling for the machine?

A. Yes, sir. I did.

Q. Where was that conversation?

A. At his own home.

Q. Who was with you at that time?

Q. Mr. Orchard.

Q. Just state to the jury the conversation you had down there with Mr. Haugland at that time. Tell the conversation as near as you can; what was said by you and by Mr. Orchard and by Mr. Haugland.

A. Mr. Orchard first spoke up and said he had come to settle for that rig, and Mr. Haugland said the time had expired at four o'clock banking hours this afternoon, and he spoke up again and they quarreled a while. They talked loud and I don't remember just what was said. Then I said I didn't come here to quarrel with you, I come to settle for that rig, and he said, "You are too late."

All of the testimony, with reference to such conversations, was admitted over the objections by defendant's counsel, which objections, we are of the opinion, were properly overruled and are equally clear there was no error in the admission of such testimony for the purpose for which it was intended. The appellant claims, in order for the plaintiff to recover, he must prove three things: (1) That he was the owner of the property; (2) that the contract which he alleges in his complaint was made; and (3) that there was an equity of value in the property over and above the mortgages there against it available to plaintiff of which he was wrongfully deprived by the refusal of the defendant to perform the contract alleged. The appellant further claims that if the plaintiff fails to prove any one of these three things,

he cannot recover in this case. We do not agree with this contention of the appellant, and we hold that the only one of such propositions necessary to establish, is the contract set out in the plaintiff's complaint. Such contract, if it were in fact made, was one of agency. As we view this case, it is immaterial whether the plaintiff was either the owner or had any equity in the property in question at the time of the sale thereof. It may be taken into consideration, however, that the plaintiff at one time was the owner of this threshing rig, having become bankrupt and filed his petition in a voluntary bankruptcy proceeding, and the trustee having been appointed, the legal title of all his property would vest in the trustee for the benefit of the creditors, subject only to the plaintiff's right of exemption. From the testimony, the property in question was not set off to the plaintiff as an exemption.

Whether the plaintiff considered he still had an interest in such rig or had a right of redemption from such sale, or was at the sale merely to make a bid on the property and try to get his threshing rig back, we cannot say, but we think it fair to assume, in view of his prior ownership of the threshing rig, and all the circumstances surrounding the case that he attended such sale for the purpose of, in some manner, protecting an interest which he must have assumed that he had in such threshing rig. It is apparent that he likely would not have attended the sale unless he had some such purpose. Whatever his purpose and intent may have been in this regard just before the time of the sale becomes, we believe, immaterial in view of the offer made by Haugland to the plaintiff when the defendant said, "I will bid it in for you and you can come in and settle afterwards." It is clear that if the plaintiff had intended to become a bidder at the sale, the statement of the defendant above recorded relieved him from the necessity after he acquiesced in the offer of the defendant and concluded to adopt this method of getting his threshing rig back.

It is in this regard that the two conversations which we have set out in full as testified to by the plaintiff become material, as they are conversations occurring at or near the time of the sale that are competent for the purpose of throwing light upon the matter of whether the minds of the parties actually met upon the contract of agency, and they were, for that purpose, properly considered by the jury in determining whether such a contract of agency had, in fact, been entered into be-

tween the parties and whether the minds had met upon such contract, and that the plaintiff relied upon the agency of the defendant to purchase the rig at the sale and permit plaintiff to settle for it afterwards. It is shown by the testimony that the plaintiff did, within the five-day period, procure the amount of money for which said threshing rig was sold at such sale, and brought it and offered it to the defendant who refused to accept it on the theory that the time was up at four o'clock on the fifth day after the sale.

If this testimony is true, the defendant must also have been of the opinion that the plaintiff had the right to repay the defendant the amount of money paid for such threshing rig on the sale any time within the five day period. If such an arrangement was made and such a contract of agency entered into, the plaintiff had the right any time within the five days after the day of sale, pursuant to the terms of the agreement, to repay his agent, the defendant, the money and thereby come into possession of the threshing rig, this not on the theory that the five days was a redemption period, but it was the period of time in which the principal had to reimburse his agent for the money paid out on the principal's account.

As we view this matter under the agreement made when the defendant bought the threshing rig, he bought it, not for himself, but for the plaintiff, and though the title to the threshing rig might be in the defendant by reason of he having purchased it at the sale the threshing rig, in fact, belonged to the plaintiff and was his property, the only condition being that he repay the defendant the money within the five days. This the plaintiff did offer to do. If the agreement was as claimed by plaintiff and as the jury found it to be, the defendant after his purchase at the sale, held the threshing rig in trust for the plaintiff until such time as the plaintiff's right to repay the money had expired. The following rule of law we think applies in this case. It is found in 2 C. J. 433:

"An executory agreement to act as agent for another is ordinarily not binding on either party unless it is based on sufficient consideration. Where, however, one who gratuitously promises to act for another enters upon performance of the undertaking, he is bound to complete performance according to his promise, notwithstanding the lack of consideration; and if the promise has been executed in pursuance of the

authority conferred, it is immaterial whether or not there was any consideration for the agent's undertaking, since the rule making consideration an essential element of a simple contract does not apply to executed agreements."

2 C. J. 717:

"If the agency is gratuitous the agent will not be liable for a nonfeasance if he never entered upon the service expected of him; but if the agent once enters upon the execution of the business and any loss results from his neglect or failure to carry out his instructions he may be held responsible."

The jury, in this case, determined the agreement was made, and testimony shows the defendant executed the agreement by purchasing the rig at the sale. He, therefore, entered upon his contract of agency and there was no need of any further consideration, the jury having decided in favor of the plaintiff and having established the making of the agreement and the defendant having entered upon the performance of the agreement and bought the threshing rig at the sale. It is proper that he should account for the value thereof, less the encumbrance to the Avery Manufacturing Company and Orchard, or, in other words, in the sum fixed by the jury in their verdict.

The contract being one of agency is not within the Statute of Frauds. Schmidt v. Beiseker, 14 N. D. 587, 5 L.R.A.(N.S.) 123, 116 Am. St. Rep. 706, 105 N. W. 1102. The appellant's contention is that the transaction is within the Statute of Frauds. The contract having been shown to be one of agency, the contention is not in point.

The respondent, in his appeal from the judgment, contends that his motion should have been granted to add to the verdict the sum of the Avery and Orchard mortgages. If it were permissible to do this in any case, which we do not believe it is, it could not be done in this case, for the reason that the contract having been determined to be one of agency the purchase of the property by the agent was for the principal, and not for the agent, and the principal was the actual owner of the property so purchased. In other words, the property was purchased at such sale for plaintiff and it was his property under the theory of the agreement. This being true, the mortgages to the Avery Company and Orchard, if they had not been paid or otherwise disposed of would still remain liens against the property in plaintiff's hands, and if plaintiff

in the meantime had paid such mortgages he has done only that which it was his duty to do under the circumstances in this case.

If the defendant still retains the property and has converted it to his own use, and if it be conceded that the amount of the two mortgages to Avery Manufacturing Company and Orchard aggregating $699.19 and that under the instructions of the court such sums were ordered to be deducted from the total value of the property, that would not authorize this court to add that sum to the verdict. The only thing that could be done would be to grant a new trial and that does not appear to have been requested, though, in all probability, the court has the inherent power to order a new trial in a proper case even though no request is made.

Instructions given by the court with reference to the Avery and Orchard mortgages are as follows:

"If you desire or find from the evidence in this case that such a contract was made as claimed by Mr. Odegard, then you will come to the question of damages in this case, and if you come to that subject and decide to allow damages, the first great question upon that matter for you to decide will be: What was the value of that threshing machine on the 6th day of August, 1913, the day on which Mr. Odegard offered to pay Mr. Haugland and Mr. Haugland refused to accept the money? What was the fair reasonable cash market value of the machine at that time and place? When you have found that, then you will deduct from that sum, first, the amount which Mr. Haugland paid for the machine and which you see Mr. Odegard would have to pay back in order to get the threshing machine, and also you will deduct further and in addition to that the amount of any liens or encumbrances or mortgages that are against that machine and which had before the 1st of August, before the time of sale, been given by Odegard against that machine."

It is clear from such instructions that the jury would deduct the liens to Avery Manufacturing Company and Orchard, which were clearly proven, from the purchase price, and also deduct the $750 paid by Haugland for the machine at the day of sale.

Haugland has retained the machine and it appears from the testimony that the plaintiff has paid the Avery and Orchard liens, and if the amount of such liens were deducted by the jury from the value of such threshing rig such deduction should not have been made. It

would be different if the plaintiff were getting the threshing rig back and had possession of it or should get possession of it, but this he cannot do as he has sued in conversion and the suit is for the value of the threshing rig. If the plaintiff is entitled to recover at all, he is entitled to recover the full value of the threshing rig less the $750 paid by Haugland.

It does appear from the testimony that Odegard has possession of the Avery notes and that he, in fact, has thus discharged the chattel mortgage lien and so it must be conceded that the Avery Company had no further lien upon said threshing rig. So was the Orchard lien partially if not wholly settled. The evidence would seem to show that there were no liens against the property in question, and if that is true there should not have been deducted from the damage allowed, which was the value of the threshing rig and the Avery and Orchard liens.

There is, however, another theory by which the jury might have arrived at the result which is shown in their verdict. It was the exclusive province of the jury to establish the value of the property in question from testimony given at the trial. The jury might have found the value of the property a great deal less than that contended for by the plaintiff, and have disallowed or not charged against the plaintiff the Avery and Orchard liens and may have found the actual value of the property in question after deducting the $750 which Haugland paid at the sale for the machine to be $700 as the actual remaining value of the property in question.

There is nothing definite or conclusive to show that the jury found the value of the property to be any specified amount and nothing to show that it deducted the Avery and Orchard liens nor that it found such liens to exist and charged the plaintiff for such liens. We are not inclined to send the case back for a new trial, and believe the verdict of the jury should stand. The question of exemption relied upon by the defendant, in the view we have taken in this case, is not material. If the whole transaction is one of agency, the question of exemption does not arise.

We have examined all the assignments of error by the defendant and find no reversible error.

Judgment appealed from is affirmed with costs.

CHRISTIANSON, J. I concur in the result.

Robinson, J. (specially concurring). This action is based on a breach of a contract of agency. The claim of plaintiff is that he had an interest in a threshing outfit—a 32 h. p. engine, separator, blower and self-feeder, which was about to be sold on a chattel mortgage for $750; that he agreed with defendant to bid in and purchase the property for plaintiff and that defendant did bid in and purchase the outfit for $750, which within five days plaintiff duly tendered him and that he refused to receive the same and held the property as his own. Defendant appeals from a verdict and judgment for $600 damages and from an order denying a new trial. He wants property well worth $2,000 for $750.

The case is governed by the law as stated by this court in Schmidt v. Beiseker, 14 N. D. 587, 5 L.R.A.(N.S.) 123, 116 Am. St. Rep. 706, 105 N. W. 1102. The complaint is based on a contract of agency, and not on a complaint for the conveyance of property exceeding $50 in value. The only question is as to whether or not there is evidence sufficient to sustain the verdict. The outfit was well worth $2,000. Actual possession of the property was held by plaintiff though his assignee in bankruptcy held the legal title subject to the chattel mortgage. The plaintiff felt that he had some real or equitable interest in the property which he desired to secure by a purchase of the same. He was present at the sale but apparently did not then have $750.

Mr. O'Hare was making the sale for the threshing machine company. Plaintiff testifies that just before the sale he had a conversation with defendant. He says: "Mr. Haugland told me he would bid it in for me and that I could come in and settle afterwards. Soon after the sale he conversed with Haugland at his bank. O'Hare was there and told me I had five days to redeem the rig. Haugland stood right there and said: You can have five days exclusive of to-day to settle for the rig. All I want is a couple of days' threshing. I said that would be $200. He said 'I will pay the crew.' "

The offer of defendant to bid in the property for the plaintiff was favorable to him and the jury found that he assented to it and relied on it, otherwise the plaintiff might have protected himself by a redemption or some other means. Doubtless for little or nothing he could have obtained a retransfer of the property from the assignee in bankruptcy, who did not care to protect the property. On the last day for redemp-

tion he tendered to the defendant the price of the property, $750 with $2 interest, and it was refused.

Now it is not the purpose of the law to aid one man in robbing another by a deceptive or smooth deal. There is no good reason for a banker going out and making false representations to a poor man whose property is about to be sold on a chattel mortgage. There is no good reason for setting aside the verdict of the jury except that it should be for a much larger sum, and yet the court may not substitute a larger verdict. There is no special finding by the jury. There is nothing for this court to do only to affirm the judgment or to grant a new trial, and probably an affirmance of the judgment is best for both parties. There should be an end to litigation.