STATE, Respondent, v. CRAGO, Appellant.

(163 N. W. 561.)

(File No. 4084.   Opinion filed June 26, 1917.)

1. **Criminal Law—Error—Larceny of Horses—Recent Possession—Explanation of—Sufficiency of Evidence—Specifications of Error, Sufficiency of.**

   Upon appeal from judgment of conviction of larceny of horses, held, that specification of error that evidence is wholly circumstantial, that guilt of accused, if established, must be inferred from fact that defendant had the horses in his possession some four months subsequent to date of alleged larceny, and that such possession was reasonably explained by defendant, while not as full and complete as it might have been, was sufficient to justify review of the evidence.

2. **Same—Larceny of Horses—Circumstantial Evidence—Recent Possession, Whether Reasonably Explained?—Sufficiency of Evidence.**

   Where on appeal in a criminal prosecution for larceny of a bay and an iron grey horse, under specification of error that evidence was wholly circumstantial and that if guilt was established it must be inferred from possession, which possession was reasonably explained; that evidence showing, among other things, that the horses were missed from their pasture nearly four months before certain horses, not including those in question, were seen by a neighbor of defendant's father in a pasture near defendant's father's house; that accused came and claimed three of the horses but not the bay; that a third party got the bay from said near-by pasture and turned it over to owner; another third party testifying the iron grey was found running with his stock on unfenced land, had followed his horses into an adjoining pasture, and that defendant between three and four months after alleged larceny came and said he had taken the iron grey therefrom and taken him home, that he had bought him of another than alleged owner; that the grey had not been in defendant's pasture before this conversation but was running in a lane; defendant testifying he never told said witness he was the owner of the grey, but that it was a colt he understood was advertised by another party as lost, which was the occasion of his going after and bringing it to his

own pasture; that next day after reading the advertisement he discovered it was a bay and not a grey that was lost; that the grey was in his pasture but two nights and one day; when he turned the grey into the road; defendant's good reputation from boyhood being abundantly shown; **held,** the evidence was wholly insufficient to sustain the verdict of guilty.

Appeal from Circuit Court, Butte County. Hon. JAMES Mc-NENNY, Judge.

The defendant, Charley Crago, was convicted of larceny of two horses, and he appeals.    Reversed.

*L. M. Simons,* and *Kellar & Stanley,* for Appellant.

*Clarence C. Caldwell,* Attorney General, *Byron S. Payne,* Assistant Attorney General, and *J. W. Malvin,* State's Attorney, for Respondent.

(1) To point one of the opinon, Respondent cited: Roberts v. Schafer, (S. D.) 156 N. W. 67; Reeves & Co. v. McGee, (S. D.) 145 N. W. 544; State v. Stone, 30 S. D. 23, 137 N. W. 606.

(2) To point two of the opinion, Appellant cited: State v. Lindley, 13 S. D. 248; State v. Potllo, 119 Pac. 1023 (Utah); State v. Keeler, 28 Iowa, 551; Brows v. State, 151 N. W. 923.

Respondent cited:    25 Cyc. 1334.

SIMTH, J.    [1] Appellant was convicted of the larceny of a horse in Butte county, and assigns as error insufficiency of the evidence. Other errors are assigned, but we deem it unnecessary to consider them. Respondent contends that the specifications of insufficiency are not such as to warrant a review of the evidence. The specification in substance is that the evidence is wholly circumstantial, and that the guilt of the acoused, if established, must be inferred from the fact that he had the horse in his possession at a time some four months subsequent to the date of the alleged larceny, and that such possession was reasonably explained by defendant. While not as full and complete as it might have been made, we deem the assignment sufficient to justify a review of the evidence.

[2] The indictment charges the larceny in Butte county of one bay gelding, three years old, and one iron grey gelding, two years old, all the property of John Seymour. The evidence showed that the two horses with several others belonging to Seymour, were in a fenced pasture adjacent to Seymour's dwelling house; the pasture was fenced with two wires tied on the posts

with bailing wire; posts two or three rods apart; intervening wires supported by two or three stakes; the horses were missed on the morning of May 19th; the fence was found to be down in two places near the northeast corner of the pasture, about a quarter of a mile from the house; the horses had been turned into the pasture about the 1st of April; there was a gate between the barn and the pasture which was generally left open so that the horses could get into the barnyard and drink where there was a pond. The evening of May 19th the gate was closed to exclude the horses from the barn and the yard about the house; it was drizzling rain, which turned into snow toward morning, and was pretty cold. In the morning the two horses were missed, but the others were still in the pasture; there were no horses' tracks or tracks on the snow at the places where the fence was down; the ground was sticky; the stakes on the fence were pulled out, laying slanting on the ground; Ole Wang, Seymour's son-in-law, started out to hunt the missing horses; went about in small circles, looking for tracks, and then went east and southeast about 10 miles, and afterwards north about 4½ miles. The horses were not seen until September 8th, when they were found in the pasture of one Dorsett in Lawrence county, about 30 miles south of Seymour's place, which was in Butte county. Dorsett testified that he found four stray horses in his pasture, which was near the dwelling house of defendant's father. The accused, then recently married, was living at his father's house. Dorsett testified that the horses found in his pasture were two sorrels, a black and a bay; that he did not see a grey gelding in that neighborhood, and that no such horse was in the pasture; that the accused came over and claimed three of the horses, but did not claim the bay horse. Mrs. Dorsett testified that on the morning of September 6th she saw the accused and a companion passing close to their house, each riding a horse and leading a third; could not describe the horses they rode, but the one led was a little black horse. One John A. True testified that he got the bay gelding which Seymour lost out of Dorsett's pasture and turned it over to Mr. Seymour. There is no evidence whatever that it was ever in the possession of the accused.

One Lindley testified that he lived about a mile from the Crago ranch; that he had a talk with Charley Crago in reference

to a two year old iron grey gelding; that this iron gray gelding had been running out for some time with his stock on his unfenced land, and had followed a couple of mares and colts into his pasture adjoining this land; that defendant Crago came to him and told him that he had taken the grey gelding out of the pasture, and had taken him home; that he had bought him of one McQuigan; that he bought three at the same time; that he thought the horse was doing no damage or he would have taken him up sooner. The witness told Crago that the horse had no brand, and he did not know whose it was, but thought possibly it was Jim Murray's; that the accused said the horse had something of a hair brand on him, and the witness told him it was all right if the horse was his. This conversation occurred near the 1st of September. This witness also testified that the grey gelding had been in the lane near his pasture for about a month or more; that after this conversation he saw the horse in Crago's pasture probably six days; that the horse had not been in Crago's pasture before the time of the conversation, but had been running in the lane. The accused testified that he was born on his father's ranch and had lived there all his life; was 22 years old, and was married in September; that he never told Lindley he was the owner of the grey gelding; that if anything was said about the ownership of the grey colt, it was that he thought he knew who the owner was; that it was a colt that had been advertised by a man, Joe Spangler; that he had heard that Spangler had advertised a grey colt; that Cecil Cornow told him that Spangler had lost a grey colt, and that a reward was offered for it; that the accused had seen the grey colt running in the road near Lindley's, with Lindley's horses; that after Curnow told him about the grey colt being advertised, he went over and looked in the road for the colt; that it was not there, but was in Lindley's pasture, and he took it out and took it home, and put it in his home corral; that the advertisement for the lost colt was at Hetzel's, written on the barn door; that he went over to Hetzel's the next day and read the advertisement, and found that it was a bay colt and not a grey colt that was lost, and then went back home and turned the grey colt out on the road.

In this connection it may be noted that Thomas A. Armstrong, one of the state's witnesses, testified that he was acquainted

with Lindley, and that about the 1st of September he found the iron grey gelding outside near Lindley's pasture, and took it up, and later turned it over to Mr. Seymour. The accused also testified that if anything was said to Lindley about purchasing horses from McQuigan, it was that he told him he had gotten a black team from McQuigan; that he still had the team. He also testified that he had never seen the grey gelding since he turned it into the main traveled road, after he had found it was not the one Spangler had lost; that the horse was only in their pasture two night and one whole day; that he took the colt from Lindley's pasture one afternoon, and the next day went over to Lindley's and told him about taking it, and then went over to Hetzel's to see the advertisement. Spangler testified to having put the advertisement on the door at Hetzel's, and offering a reward. Cecil Curnow testified that he remembered telling Crago about the horse which was advertised by Spangler on the barn door, but did not remember what description he gave him of the horse. The testimony of these witnesses substantially covers every particle of evidence in the record connecting accused with possession of the alleged stolen property. A number of witnesses who had known the accused since his boyhood testified to his good reputation in the community where he lived, and no attempt was made by the state to rebut this evidence. We are satisfied that the evidence is wholly insufficient to sustain the verdict of the jury.

The order and judgment of the trial court are reversed.