THOMAS J. HAMPTON, Otherwise Known as Thos. J. Hampton, Appellant, v. T. J. ROSS, Respondent.

(217 N. W. 845.).

**Appeal and error — squarely conflicting evidence as to ownership of property — verdict of jury is binding on court.**

1. In an action for the conversion of certain personal property wherein both plaintiff and defendant claim to be the owner of the property in dispute, through purchase from the same vendor, the evidence is examined and it is *held* that there is a square conflict in the evidence upon the question of ownership and that the verdict of the jury on that question is binding on the court.

**Appeal and error — excluding certain evidence held nonprejudicial.**

2. Certain assignments of error predicated upon rulings in the admission and exclusion of evidence are considered, and the rulings held to be proper or nonprejudicial.

**New trial — refusing new trial in instant case held not error.**

3. For reasons stated in the opinion it is held that the trial court did not err in refusing to grant a new trial on the ground of newly discovered evidence.

Opinion filed February 10, 1928.

Appeal and Error, 4 C. J. § 2836 p. 858 n. 3; § 2994 p. 1010 n. 7. New Trial, 29 Cyc. p. 918 n. 5.

Appeal from the District Court of Cass County, *Cole,* J.

Plaintiff appeals from the judgment and from an order denying his motion for a new trial.

Affirmed.

*A. C. Lacy,* for appellant.

An affidavit made by a third party may be competent against one who, knowing the contents of such affidavit, admits its truth. 1 Enc. Ev. 478; Knight v. Rothchild, 172 Mass. 546, 52 N. E. 1062.

*W. H. Barnett (Seth W. Richardson* on oral argument), for respondent.

CHRISTIANSON, J. This controversy involves the ownership of two cows and seventeen hogs. Both plaintiff and defendant claim to be owners. Each of them claims to have purchased the same from one John Gamble in November 1926. The defendant obtained possession and refused to surrender the same to plaintiff upon demand. The plaintiff thereupon brought this action alleging that he was the owner and entitled to the possession of such property on and after November 18, 1926, and that the defendant unlawfully took the same into his possession and converted the same to his own use, to plaintiff's damage in the sum of $475.00. The defendant interposed a general denial. The issues thus framed were tried to a jury and resulted in a verdict in favor of the defendant. Judgment was entered accordingly. Thereafter plaintiff moved for a new trial on the grounds of insufficiency of the evidence, errors of law occurring at the trial and newly discovered

evidence. The motion was denied and plaintiff appealed from the judgment and from the order denying a new trial. The facts necessary to an understanding of the questions raised on the appeal are as follows: In November 1926 and for some time prior thereto one John Gamble was occupying a farm in the vicinity of Arthur, Cass county, in this state, as a tenant of one Elmer Smith. The defendant Ross was a merchant at Arthur, from whom said John Gamble had purchased merchandise on credit. The plaintiff Hampton resides in Fargo, where according to his testimony he is engaged in the collection, real estate and law business. According to the testimony of the plaintiff, Hampton, and the witness, Elmer Smith, these two on November 18, 1926 went to the farm occupied by Gamble, and Hampton thereupon purchased from John Gamble all the personal property on said farm belonging to Gamble, including the cows and hogs in the controversy here. These parties further testified that the plaintiff drew up a bill of sale on a piece of paper torn out of a tablet; that John Gamble executed the same and Elmer Smith signed as witness thereto and that the bill of sale was delivered to the plaintiff. The bill of sale, however, was never filed for record in the office of the register of deeds and the plaintiff testified that although he had made search he was unable to locate it and could not produce it. Hampton and Smith both testified that the purchase price paid to Gamble consisted of certain notes theretofore executed by Gamble to Smith and by him transferred and endorsed to Hampton for value. The plaintiff further testified that on November 23, 1926, he again went out to the farm and found the two cows and seventeen hogs in controversy missing and that he ascertained that they had been taken away by the defendant Ross. Hampton further testified that thereafter on December 4, 1926, he went to see Ross and that Ross then admitted that he had caused the hogs and cattle to be taken away and claimed that he had a chattel mortgage on such animals executed and delivered to him by John Gamble. And that in such conversation Ross further stated that before the chattel mortgage was executed Ross was informed by Gamble that he (Gamble) had given to the plaintiff, Hampton, a bill of sale of all his (Gamble's) personal property including the hogs and cattle in controversy; but that Ross had examined the reports relating to instruments filed in the register of deeds office and had ascertained that such bill of

sale had not been filed for record and that therefore he had taken a chattel mortgage and dated it back (to September 25, 1926) with the idea that such chattel mortgage being of a prior date would become good as against such unfiled bill of sale; and that said Ross then and there told Hampton that he intended to stand on his mortgage. Hampton further testified that he again saw Ross on or about December 20, 1926 and had a somewhat similar conversation with him. The witness, Elmer Smith, testified that he saw Ross on December 24, 1926 and then served upon him a written demand signed by the plaintiff demanding possession of the hogs and cows. The original demand with Smith's affidavit of service attached thereto was offered and received in evidence. Smith further testified that at this time he had a conversation with Ross; that in such conversation Ross stated that he had knowledge of Hampton's bill of sale; that Gamble told him of this bill of sale before he (Gamble) executed the chattel mortgage to Ross; and that in such conversation Ross further told Smith that the mortgage had been dated back so as to take precedence over the bill of sale, and that he (Ross) intended to stand on his chattel mortgage. The testimony on the part of the plaintiff was to the effect that the hogs and cows were of the aggregate value of $375. The testimony on the part of the defendant was to the effect that their aggregate value was $250.00.

The defendant, Ross, testified that during 1926 he had furnished Gamble groceries on credit; that later Gamble gave a promissory note for this account; that about September 25, 1926, Gamble offered to give Ross a chattel mortgage to secure the payment of the note; that on or about November 23, 1926, Gamble came in and certain negotations were had as a result of which Gamble executed a chattel mortgage to Ross to secure the payment of a note for $247.88 dated September 25, 1926 and due November 30, 1926. And that in accordance with Gamble's suggestion the mortgage was postdated to September 25, 1926, the date of the note, and the approximate date when Gamble first offerred to give the mortgage. The chattel mortgage covered not only the hogs and the cows but also three horses, a gas engine and certain farm machinery. Gamble further testified that on that same day a deal was made whereby Ross purchased from Gamble the cows and hogs described in the mortgage and in consideration thereof agreed to deliver and did surrender to Gamble the promissory note secured by

the chattel mortgage. Ross further testified that on November 24, 1926, he sent one Roden with a truck out to the farm where Gamble was living; that Gamble accompanied Roden on this trip and that the hogs were loaded in the truck and taken to the farm of one Frank Johnson where Ross had arranged to have them kept and fattened for the market. Ross further testified that some four or five days later, the cows were taken by Roden with truck and delivered to a farmer living near Gamble's place; and that he (Ross) still has such cows in his possession. Ross testified that as a result of this transaction Gamble's indebtedness to him was fully satisfied. Ross denied that at the time of the purchase he had any knowledge or notice of any deal, executed or pending, between Gamble and Hampton; and he positively denied that Gamble at any time, intimated to him that he had executed a bill of sale to Hampton. Ross further testified that when Hampton came to see him (Ross) about the matter that he (Hampton) stated that Gamble had given a bill of sale to Smith. Ross denied that in his conversations with Hampton and Smith he ever stated or admitted in any way that he (Ross) had any notice or knowledge of any bill of sale either to Hampton or to Smith at the time he purchased the property from Gamble. Ross' testimony to the effect that the hogs were taken in a truck by Roden and delivered to Frank Johnson's farm on November 24, 1926; and that John Gamble accompanied Roden on this trip was corroborated both by Roden and Johnson. The testimony of Roden that John Gamble was present at the time of the removal of the cows was corroborated by the testimony of Harry Shafer, the farmer to whose place the cows were taken.

In the course of the examination of the plaintiff, Hampton, he testified that when he called on the defendant Ross he (Hampton) exhibited to Ross the bill of sale and also a certain affidavit signed by John Gamble. The defendant Ross denied that Hampton exhibited any bill of sale but admitted that he exhibited to him Gamble's affidavit. Hampton further testified that Ross after reading the affidavit stated that the facts were "practically" as stated in the affidavit. Plaintiff's counsel thereupon offered the affidavit in evidence. The affidavit is to the effect that John Gamble on November 18, 1926 gave a bill of sale of all his personal property including the cows and hogs to Thomas J. Hampton "and that at said time he surrendered possession of said per-

sonal property to said Thomas J. Hampton; that a day or two after giving said bill of sale he executed a chattel mortgage upon said personal property to T. J. Ross of Arthur, North Dakota, and that said chattel mortgage was dated back to September 25th, 1926, but that in truth and in fact said chattel mortgage was not executed until a day or two after the giving of said bill of sale, and that at the time of the execution of said chattel mortgage he told said T. J. Ross that he had given said bill of sale of said personal property, and that said T. J. Ross on the date of affiant giving said mortgage, took 17 of said hogs and the said 2 cows away from said premises against the objection of affiant."

On objection seasonably made the affidavit was excluded. The first assignment of error presented on this appeal is predicated upon such exclusion. In our opinion, the assignment is devoid of merit.

Plaintiff's counsel does not claim that the affidavit was admissible as the evidence of Gamble; but he claims that inasmuch as there was testimony, on the part of Hampton that Ross had stated in conversation with him that Gamble's affidavit was "practically" true, the affidavit became and was admissible as an admission or statement made by the defendant in such conversation. The only part of the affidavit that could be admissible on this theory was the portion relating to the transaction between Gamble and Ross, and the statement claimed to have been made by Gamble to Ross that he (Gamble) had given a bill of sale of said personal property to Hampton. But the plaintiff did not seek to introduce merely such statements. He offered the affidavit as a whole. And the affidavit purported to be a version, not only of Gamble's deal with Ross, but of his transaction with Hampton as well. In other words, if admitted the affidavit would have constituted not merely part of an alleged admission on the part of Ross as to his knowledge of the bill of sale, and that the mortgage was postdated; but it would have constituted as well Gamble's corroboration of Hampton's testimony as to his purchase of the property from Gamble and Gamble's delivery of possession to Hampton.

In any event no prejudice resulted from the exclusion of the portions of the affidavit which it is claimed were admissible; for upon the trial it was conceded that the mortgage was in fact executed subsequent to November 18, 1926 and dated back to September 25, 1926. And both Hampton and Smith were permitted to testify again and again that

Ross, in the conversations they had with him, told them that before Gamble executed the chattel mortgage to Ross or sold the property to Ross, Gamble told him (Ross), that he had already sold the property to Hampton and given him a bill of sale therefor. It is also clear that the jury must have understood that Gamble's affidavit contained statements to this effect. Hampton testified that Ross, after reading the affidavit, said the facts were practically as stated therein. The affidavit was thereupon offered in evidence and immediately following the exclusion thereof Hampton proceeded to testify in detail regarding the alleged statements claiming to have been made by Ross. We quote from his testimony:

Q. What did Mr. Ross say to you if anything, in regard to his knowledge of you having a bill of sale at the time he took the chattel mortgage? A. Mr. Ross said that John Gamble had told him that he had issued a bill of sale to me, Thomas J. Hampton, and that he had sold all of his farm equipment, including the stock, and machinery to me, and that he was just staying there temporarily for a few days, until I could secure someone to take charge of the stock, and Mr. Ross further said that he took the chattel mortgage—that he talked with Gamble about giving a chattel mortgage, and that Gamble didn't want to give a chattel mortgage after he had given the bill of sale, but that after consulting someone, Mr. Gamble came back and said he would give a chattel mortgage, if it was dated behind the date of the bill of sale. Q. You say Mr. Ross told you this? A. Yes, sir. Q. Did he say this conversation took place before or after the obtaining of the chattel mortgage? A. That took place before he obtained the chattel mortgage. Q. Between him and Mr. Gamble? A. Yes.

Plaintiff was afforded every opportunity to prove that Ross, in his conversations with Hampton and Smith, made the alleged admissions which it is claimed that Gamble's affidavit was offered to prove. The defendant has no valid cause for complaint of any ruling of the trial court as regards this phase of the case.

Certain errors are predicated upon other rulings on the admissibility of the evidence and upon instructions to the jury. None of them are supported by any extended argument in appellant's brief. All have been examined, however, and in our opinion no one of them is well founded. A careful consideration of the record leads us to the conclu-

sion that the trial court was eminently fair to the plaintiff in all his rulings and instructions. The record shows that plaintiff's counsel requested a number of instructions and that all instructions so requested were given. In the first instruction the court specifically informed the jury that if the plaintiff purchased the property from Gamble when he went to Gamble's farm the plaintiff was entitled to recover without regard to any subsequent deal made by the defendant.

It is apparent from the entire record that the determinative question in the case was that of credibility of witnesses. If the plaintiff and Smith told the truth, then under the court's instructions, the jury could not possibly have rendered a verdict except in favor of the plaintiff and this without regard to whether they might have believed or disbelieved defendant's version of his transaction with Gamble. Apparently the jury did not believe the plaintiff and his witness. They did not believe that the plaintiff had purchased the property from Gamble. They did not believe that plaintiff was the owner of the property. And upon the record in this case it is, we think, too clear for controversy that on this question there was a square conflict in the evidence, and the jury's verdict is binding on this court.

The next and last assignment of error supported by argument is that the trial court erred in refusing to grant a new trial on the ground of newly discovered evidence. The basis of the motion is as follows: Upon the trial Hampton and Smith both testified that in their conversations with Ross he (Ross) said nothing about having purchased the property from Gamble. That he merely claimed that Gamble had given him a chattel mortgage thereon and that he (Ross) was going to stand on his mortgage. Upon cross-examination Ross was asked: "You never foreclosed this mortgage, did you?" He answered, "No sir." The alleged newly discovered evidence consists of a showing that notice of chattel mortgage foreclosure sale dated December 22, 1926 was published in the Casselton Reporter in the issue of December 24, 1926, reciting that the mortgage given by Gamble to Ross would be foreclosed by a sale of the property therein described at the front door of the post office at Arthur on December 31, 1926. There is no showing and no contention that the sale was made. On the contrary whatever inference is to be drawn must be that the proceeding was abandoned. In the

memorandum opinion filed upon the denial of a new trial the trial court said:

"There is one matter that perhaps I should call special attention to and that is the allegation of the plaintiff through his counsel that the defendant Ross committed perjury, when he said he never foreclosed the chattel mortgage. As a matter of fact, and that appears in the entire record, he did not foreclose it; he, however, having advertised it for foreclosure, after the date that he claimed he purchased the property in question. In this connection, no presumption of crime or fraud is ever indulged in, and it may well be, and would be a fair presumption that on account of the claims made by the plaintiff, or for him, that the defendant for a time concluded that in order to make himself safe, he would have to foreclose, and authorized the foreclosure, and thereafter discovered or satisfied himself that a foreclosure was not necessary. The allegation of perjury, the way it is put by plaintiff's counsel is surely voluntary, and the claimed new evidence, new upon its face, is, in my judgment of no virtue as new evidence of a character warranting the court to set aside the verdict of the jury and grant a new trial."

The views of the trial court thus expressed meet with our entire approval and are decisive of the question. It follows from what has been said that the judgment and order appealed from must be affirmed. It is so ordered.

NUESSLE, Ch. J., and BURKE, BURR, and BIRDZELL, JJ., concur.