## ANE MARIE KRAFT, Respondent, v. CHARLES FRANKLIN MARTELL, Appellant.

(225 N. W. 79.)

Opinion filed April 13, 1929.

*Wm. G. Owens,* for appellant.

*John J. Murphy* (Wm. Langer, on oral argument), for respondent.

BURKE, Ch. J.   This is an action to recover the sum of $550, the contract price of cattle and horses, alleged in the complaint to have been sold to the defendant by the plaintiff.   The defendant answered by general denial.   At the close of all the testimony the defendant moved for a directed verdict which was denied and a verdict was returned for the plaintiff.   A motion was then made by the defendant to set aside the judgment and for a dismissal of the action on the ground that the verdict was contrary to the evidence and plaintiff had failed to prove her case by competent testimony, which was also denied, and from the judgment the defendant appeals.

The horses and cattle in question belonged to the plaintiff, and she

testified that a few days before the execution of the bill of sale, the defendant was at her place; that she told him she wanted to sell the cattle and horses and invest the proceeds in land which had timber and water on it; and that the defendant agreed to find her such land, and she agreed to sell to him ten head of cattle and two horses, and to give him one horse as a commission for finding and procuring for her the kind of land she wanted, and that he was to pay the $550 either to the plaintiff or to the party from whom the land was purchased; that at said time they went out and looked at the cattle and horses; that he was satisfied with the price and agreed to pay $550 for the ten head of cattle and two horses and to accept the other horse for his services in procuring the land. That a few days later the defendant came back and took the plaintiff and her husband to Fairview; that they went into Nohle's Bank, and then they went out to look at some land which had timber and water and was in the irrigated district; that plaintiff agreed to buy the land of Nohle, went back to the bank, the bill of sale was made out for the cattle and horses, including the horse which the plaintiff claims the defendant was to have for his service in finding the land; that when they had paid Nohle $780 on the land, for some reason, Nohle could not give them title, and offered them a forty-acre tract on the hills, not in the irrigated district, and with no timber or water, which they accepted at the agreed price of $780. A few days later the plaintiff and her husband met the defendant on the road, plaintiff asked him for the money for the cattle, and he muttered something which she could not understand and drove away.

This testimony is largely corroborated by the plaintiff's husband who further testified that, "later at Nohle's place and in the presence of Nohle, I asked Mr. Martell whether he was going to pay the $550 to my wife for her cattle and horses, or whether he would pay it to Andrew Nohle? He said, 'no, I want to keep this money for making the deal.' Mr. Nohle said, 'Martell has never paid me a dollar' and Martell said, 'I kept the money for making the deal.' "

In October 1923, the witness had another conversation with Nohle and Mr. Martell in which he says, "I said have you paid this money to Andrew? He said, 'No.' 'Nohle said that Martell had not paid him and Martell said he wouldn't pay.' "

The defendant testified that he never had any deal with the plain-

tiff; that he was not at her place, and did not go out to look at any cattle or horses; that he bought the cattle and horses from Andrew Nohle; that he did have a talk with Mr. Kraft who said he wanted a piece of land and, I said I would try and get it for him.

It is apparent that the defendant had no particular land in view, for when he took the plaintiff and her husband over to Fairview, he said: "I first saw Mr. Shafer who used to be in the real estate business and inquired of him. We met Mr. Nohle and we all went out and Nohle showed them a piece of land and sold it to them. Nohle and the Krafts made the deal; I had nothing to do with it. Mrs. Kraft asked me for the money once about two years ago. They met me on the road, I told them I did not get any cattle from them. If they had anything coming they should go to Nohle, he was the one they made the deal with. I was present in the bank when the bill of sale was made, I guess the man who drew it suggested, that they make the bill of sale direct to me to save making another from Nohle to me. I had not been over to Krafts before the day the bill of sale was made, we had not agreed on the price for the horses and cattle before that day. I am not quite sure that I went after the cattle, or whether Charlie brought them down. I did not talk with Mrs. Kraft about buying cattle, never did."

When asked how he paid Nohle, he said, "well, as I understood it, I had done considerable work for him in the way of looking after stock, and I asked him one time about getting something for doing it, and he said, 'I will give you something sometime.' So after we made the deal for these cattle, he said, 'well, that will help pay you for some of the work you have been doing,' that was about six months after, that he said that."

This is the substance of the testimony, and it appears that there is a direct conflict between the plaintiff and defendant; the plaintiff claiming that the cattle and horses were sold to the defendant, and the defendant claiming that they were sold to Nohle, and that he purchased them from Nohle.

There is no merit in the defendant's contention, that the court erred in instructing the jury that, "the plaintiff seeks to recover damages for an alleged breach of an alleged contract."

The court follows the statement with the claims of the plaintiff as

alleged in the complaint. Briefly stated, the plaintiff claims that she sold the horses and cattle for $550 under an agreement that the defendant was to pay the money either to her or to some person from whom they purchased land which she claims he agreed to locate for her, that he never paid her, nor did he pay on any land that she purchased. The defendant claims he never had any deal or contract with the plaintiff at all, and although he answered by general denial he was permitted to offer evidence of an affirmative defense, which was submitted to the jury in the instructions of the court. After stating the claims of the plaintiff, the trial judge stated in his instruction to the jury, "Now the defendant contends, that he did not enter into any agreement to pay the plaintiff for these cattle and these horses, but that he had a transaction with one Andrew Nohle, and that in fact Andrew Nohle was the person who had an understanding with the plaintiff whereby plaintiff was to turn over these horses and these cattle in payment of certain alleged land deal or land sale. Now if you find that this defendant, Martell, did not agree to pay the plaintiff for this stock then, of course, she cannot recover."

The defendant contends, that the court erred in admitting the testimony of witness Kraft relating to conversations between Kraft, Martell and Nohle. The statements made by Kraft and Nohle, if made, were made in the presence of the defendant, and his statements in answer thereto, if they were made, were admissions against his interests, and there was no error in the admission of the testimony. The conversations all relate to an alleged transaction between the plaintiff and defendant, involving the payment of the purchase price of horses and cattle which the defendant admits he got, and an alleged deal by the terms of which, the defendant undertook to procure for the plaintiff, land with timber and water and were therefore competent and material.

The testimony presented an issue of fact, upon which there was a direct conflict and as the verdict of the jury is conclusive, the judgment is affirmed.

CHRISTIANSON, BIRDZELL, NUESSLE, and BURR, JJ., concur.